IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Jon J. Runge, | ) |
|                       Plaintiff, | ) Civil Action No. 6:08-231-GRA-WMC |
| vs. | ) |
| | ) **REPORT OF MAGISTRATE JUDGE** |
| Tom Barton, President, Greenville Technical College, Janie Reid, Dean of Financial Aid, Greenville Technical College, P. George Benson, President, College of Charleston, and Don Briggs, Director of Financial Aid, College of Charleston, | ) |
|                       Defendants. | ) |

This matter is before the court on the motions for summary judgment of the remaining[1] defendants, P. George Benson, Don Griggs, Tom Barton, and Janie Reid. The plaintiff, who is proceeding *pro se*, alleges that student financial aid rules for college violate his constitutional rights.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02)(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

On March 9, 2009, defendants Benson and Griggs filed a motion for summary judgment. By order filed March 24, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On April 15, 2009,

---

[1]The State of South Carolina was terminated as a defendant on September 15, 2008, and The Honorable G. Ross Anderson, Jr., Senior United States District Judge, granted the motions to dismiss of Governor Mark Sanford and Garrison Walters on August 21, 2009.

defendants Barton and Reid filed a motion for summary judgment, and another *Roseboro* order was filed on April 16, 2009. The plaintiff filed his opposition to Benson and Griggs' motion on April 27, 2009, and filed his opposition to Barton and Reid's motion on May 20, 2009.

## **FACTS PRESENTED**

The plaintiff alleges that he is the parent of three adult children who are or have been enrolled in colleges in South Carolina. He alleges that two of them lost State LIFE scholarships and that a third child has not received one. Essentially, the plaintiff complains about two alleged matters: 1) requirements for a minimum 3.00 grade point average for college assistance because he considers such an average arbitrary when students with 2.99 averages are not qualified to receive such assistance; and 2) classification of adult students less than 24 years old as dependent for purposes of consideration for college financial assistance and thereby taking into account the financial ability of parents to pay for the costs of the students' education.

Defendant P. George Benson is the President of The College of Charleston, and defendant Don Griggs is the Director of Financial Aid at The College of Charleston. When a student at The College of Charleston wants to receive financial aid, that student must complete a Free Application for Federal Financial Aid and submit it to the U.S. Department of Education. The Department of Education will then analyze and determine the student's eligibility and then send the results of the analysis to the Financial Assistance and Veteran's Affairs Department ("the Department") at The College of Charleston, which then packages the financial aid to the eligible student (Griggs aff. ¶ 7). The main goal of the Department is to ensure each eligible student receive as much financial aid as the student may request and is eligible to receive under the law (Griggs aff. ¶ 4).

The Department does not participate in establishing the standards or criteria for determining eligibility for federal financial aid (Griggs aff. ¶ 8). In addition, each incoming

2

freshman at the college is automatically screened to receive a LIFE Scholarship. If the student meets the statutory requirements, that student will receive the scholarship. No one in Griggs' office possesses any discretion in determining a student's eligibility for the LIFE Scholarship (Griggs aff. ¶9).  If a student does not meet the requirements of a LIFE Scholarship, the Department will then screen that student for a HOPE Scholarship. If the student meets the statutory requirements, that student will receive the scholarship.  No one in Griggs' office possesses any discretion in determining a student's eligibility for the HOPE Scholarship (Griggs aff. ¶10).  Griggs' office does not possess any discretion in determining a student's eligibility and must follow statutory requirements established by state and federal law (Griggs aff. ¶11).

Defendant Tom Barton is the President of Greenville Technical College ("Greenville Tech"), and defendant Janie Reid is the Dean of Financial Aid at Greenville Tech.  When a student at Greenville Tech wants to receive financial aid, that student must complete a Free Application for Federal Financial Aid and submit it to the U.S. Department of Education.  The Department of Education will then analyze and determine the student's eligibility, and then it will send the results of the analysis to the Financial Aid Department ("the Department") at Greenville Tech, which then packages the financial aid to the eligible student (Reid aff. ¶7).  The main goal of the Department is to ensure each eligible student receives as much financial aid as the student may request and is eligible to receive under the law (Reid aff. ¶ 4).  Reid's department does not participate in establishing the standards or criteria for determining eligibility for federal financial aid (Reid aff. ¶8).  In addition, each incoming freshman at Greenville Tech is automatically screened to receive a LIFE Scholarship.  If the student meets the statutory requirements, that student will receive the scholarship.  No one in Reid's office possesses any discretion in determining a student's eligibility for the LIFE Scholarship.  If a student does not meet the requirements of a LIFE Scholarship, Greenville Tech will then screen that student for a S.C. Lottery Tuition

3

Assistance Grant. If the student meets the statutory requirements, that student will receive the grant. No one in Reid's office possesses any discretion in determining a student's eligibility for the S.C. Lottery Tuition Assistance Grant (Reid aff. ¶10). Reid's office does not possess any discretion in determining a student's eligibility and must follow statutory requirements established by state and federal law (Reid aff. ¶11).

The plaintiff's first claim attacks the constitutionality of the 3.0 grade point average requirements for the State of South Carolina (amended comp., p. 6). His second claim alleges financial stress caused by unconstitutional financial aid practices (amended comp. ¶ [B1]). Factually, the plaintiff alleges his daughter attended Greenville Tech, and because the plaintiff failed to send in his federal tax forms during the application process, his daughter received an invoice for the tuition (amended comp. ¶¶ [B8] to [B10].) The plaintiff alleges that students over the age of 18 are legal adults, which prohibits colleges from requiring an applicant's parents to participate in the financial aid process. The plaintiff's third claim alleges invasion of privacy, false light, extortion, and violation of due process rights (amended comp. p. 25). The plaintiff claims that a college requiring an applicant's parent to submit an IRS form improperly punishes the applicant who constitutes a totally separate and independent adult. He also claims the IRS forms contain a large amount of personal information that should not be reviewed in order to determine one's eligibility. The plaintiff claims this amounts to extortion and invasion of family privacy. The plaintiff's fourth claim attacks a college student's voting rights (amended comp., p. 38). Here, the plaintiff alleges a massive conspiracy of numerous agencies that essentially challenges the voting age. The plaintiff claims an 18-year-old, who does not have the knowledge to vote responsibly, cannot change the system over the amount of time he/she spends in college. The plaintiff's fifth claim alleges that when applying for financial aid for his son, he had a disagreement with the College of Charleston about the "verification process" (amended comp., p. 57). The plaintiff named defendants Benson and Griggs in this claim "to give them an opportunity to defend

4

themselves for their actions which they undoubtedly believe are right and proper and which they are required by current law to follow" (amended comp. ¶ III.D, p. 58).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to

5

withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff seeks the following injunctive relief in his amended complaint:

(1) a ruling from the court striking all laws which require parents to participate in the financial aid system, and which strike the 3.0 grade requirement (amended comp., p. 62, ¶ [R1]);

(2) the court acknowledge certain facts about the voting system (amended comp., p. 62, ¶ [R2]);

(3) Greenville Tech cease from requiring parents to participate in financial aid process and that his daughter receive financial aid despite not being in compliance (amended comp. p. 63, ¶ [R3]);

(4) a ruling on the constitutionality of the methods for financing a college education in State of South Carolina (amended comp., p. 63, ¶ [R4]);

(5) that the defendants respond in a straight forward way (amended comp., p. 64, ¶ [R5]);

(6) that the defendants not intimidate the plaintiff (amended comp., p. 64, ¶ [R6]);

(7) to be allowed to modify his requests for relief (amended comp., p. 63, ¶ [R7]); and

(8) that the rules, regulations and calculations for assigning taxpayer financed college financial aid be made public and easily accessible (amended comp., p. 65, ¶ [R8]).

6

The defendants argue that the plaintiff has failed to state a claim for which relief can be granted against them. This court agrees. Defendants Benson, Griggs, Barton, and Reid cannot provide the relief sought by the plaintiff in his amended complaint. Further, the plaintiff has failed to allege facts to support any cause of action against these defendants. The plaintiff does not allege defendants Benson, Barton, and Reid did or failed to do anything other than follow state and federal laws concerning scholarship and grant awards – the procedures with which he disagrees. With regard to defendant Griggs, the plaintiff alleges only that Griggs failed to respond to a June 24, 2008, facsimile regarding his son's application for financial aid (amended comp., p. 57). The plaintiff also states in his amended complaint that Griggs complied with current law as required (amended comp. ¶ III.D, p. 58). Griggs can only recall speaking with the plaintiff on the telephone and explaining the financial aid process to him (Griggs aff. ¶12). In addition, the plaintiff's son received all of the financial aid for which he qualified (Griggs aff. ¶14).

The plaintiff has made claims on behalf of his adult children, including his challenge to the grade point average requirements for scholarships (amended comp., pp. 6-17), his claim that an adult child should be awarded financial assistance without regard to parental cooperation with the financial aid process (amended comp., pp. 17-25), and his claim regarding allegedly unconstitutional burdens on college student voting rights (amended comp., pp. 38-56). The plaintiff lacks standing to proceed on these claims. In order to have standing, a plaintiff must allege and prove an actual or imminent injury caused by the defendants' challenged conduct that can be redressable by the relief sought. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). A plaintiff must establish, *inter alia*, that he suffered an injury in fact, that is, "an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent." *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154 (4th Cir.2000) (en banc). "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a

7

result of the statute's operation or enforcement." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citing *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)). Where no such injury is present, federal courts are without constitutional authority to consider a plaintiff's claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-60 (1992); *see also Schuppin v. Unification Church*, 435 F.Supp. 603, 605 (D.C. Vt. 1977) (parents do not have standing to bring suit on behalf of adult child absent a showing that the child is incompetent). The plaintiff's claims revolve around his children's qualifications and requirements for receiving and maintaining scholarships. He cannot demonstrate a realistic danger of sustaining any direct injury as a result of government action. Therefore, he clearly lacks standing to bring such claims on their behalf.

Moreover, the plaintiff has failed to allege any constitutional violation by these defendants. Accordingly, the defendants are entitled to summary judgment on the Section 1983 claims. Further, to the extent the plaintiff raises his claims against the defendants in their individual capacities, they are entitled to qualified immunity. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the

8

qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

Here, the plaintiff has failed to allege a violation of a clearly established right by these defendants. Reid's and Griggs' financial aid departments worked with the plaintiff and assisted his children in receiving financial aid (Griggs aff. ¶ 12; Reid aff. ¶12). The plaintiff has not established that his children possessed a protected property right in receiving financial aid. Furthermore, the plaintiff cannot prove these defendants acted unreasonably when they did nothing other than follow state and federal laws relative to financial aid. To the extent the plaintiff claims Griggs never responded to a facsimile regarding his son's financial aid application (amended comp., p. 57), Griggs can only recall speaking with the plaintiff on the telephone and explaining the financial aid process to him (Griggs aff. ¶12). In addition, the plaintiff's son received all of the financial aid for which he qualified (Griggs aff. ¶14). Based upon the foregoing, the defendants are entitled to qualified immunity.

As to the plaintiff's claims against Benson, the President of The College of Charleston, and Barton, the President of Greenville Tech, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's

9

constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). Both Griggs ' and Reid's affidavits state that their offices dealt solely with the plaintiff, and the presidents of the colleges were not involved (Griggs aff. ¶ 15; Reid aff. ¶14). Accordingly, the claims against Benson and Barton fail.

Lastly, to the extent the plaintiff alleges any state law claims, the defendants are entitled to immunity. Although not specifically plead, individual defendants are not proper parties in a tort action against a government agency. The South Carolina Tort Claims Act states in pertinent part:

> This chapter constitutes the exclusive remedy for any tort action committed by an employee of a governmental entity. An employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable therefor except as expressly provided for in subsection (b).

S.C. Code Ann. § 15-78-70(a). Under subsection (b) an individual is not immune if he/she acted outside scope of employment, or if his actions constituted actual fraud, actual malice, intent to harm, or a crime of moral turpitude. *Id.* § 15-78-70(b). In the instant case, the plaintiff does not dispute that the defendants followed the law when addressing financial aid issues. The evidence before the court is clear that the defendants were acting within the scope of their authority, thereby entitling them to individual immunity. Accordingly, such claims fail.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendants' motions for summary judgment be granted (docs. 170, 184) be granted.

August 28, 2009
Greenville, South Carolina

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE